IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016

## STATE OF TENNESSEE v. RAKEEM RASHAN JONES and GIOVOANNE TREYMANE JOHNSON

**Appeal from the Circuit Court for Montgomery County
Nos. 41300836, 41300837     John H. Gasaway, III, Judge**

**No. M2015-00515-CCA-R3-CD – Filed April 15, 2016**

In a joint trial, Defendants Giovoanne Treymane Johnson and Rakeem Rashan Jones were convicted of first degree felony murder, second degree murder, and especially aggravated robbery. As to each, the trial court merged the second degree murder conviction into the felony murder conviction and imposed a sentence of life imprisonment. As to the convictions for especially aggravated robbery, each defendant was sentenced to twenty-five years, with the sentences to be served consecutively to the sentence for the felony murder conviction. On appeal, Defendant Jones argues that (1) the trial court erred in denying his motion to sever the defendants for trial; (2) the evidence is insufficient to sustain the convictions; (3) the trial court erred both in the length and manner of service of the sentences; and (4) the court erred in denying his motion for mistrial. Defendant Johnson argues on appeal that the evidence is insufficient to sustain the convictions and that the trial court erred in ordering that the sentences be served consecutively. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. ROGER A. PAGE, J., not participating.

Christopher G. Clark and Zachary L. Talbot, Clarksville, Tennessee, for the appellant, Giovoanne Treymane Johnson.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Rakeem Rashan Jones.

Herbert H. Slatery III, Attorney General and Reporter; Michael A. Meyer, Special Counsel; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash and Arthur F. Bieber, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The defendants' convictions resulted from their robbing and shooting to death Taylor Hotzoglou, an E-4 Specialist in the United States Army stationed in Ft. Campbell, Kentucky, after he had offered them assistance.

Steven Butterman testified that on April 28, 2012, he was an E-4 Specialist with the United States Army and stationed at Ft. Campbell, Kentucky, and shared an apartment in Clarksville with the victim. At approximately 10:30 p.m. that evening, the two were in their apartment, when two men, whom they did not know, knocked on their door and asked to use their telephone. Mr. Butterman identified the defendants as the men who came to the door. He said the specific request was made by Defendant Johnson, who was given a cell phone by the victim and, apparently, dialed some numbers, although a call was not completed. After Defendant Johnson told the victim that they wanted to go to a Mini Mart store, the victim offered to drive them there. The victim returned inside the apartment to retrieve his keys, and Mr. Butterworth followed him because he was suspicious of the defendants. For protection, he gave the victim a Walther PPK .380 pistol, a weapon which he identified at trial. He watched as the victim and the defendants got into the victim's vehicle, with the victim driving, Defendant Johnson in the front passenger seat and Defendant Jones in the backseat. About forty-five minutes later, Mr. Butterman telephoned the victim's cell phone but received no answer. Detective Ulrey knocked on their apartment door at around 3:00 a.m., and Mr. Butterman provided him with the original box for the Walther pistol, as well as the purchase receipt, both of which had the serial number for the weapon.

Junior Morrison testified that, on the day of the offenses, he was living in the same apartment as the victim and Mr. Butterman, and, like them, was employed by the United States Army. Between 10:30 and 11:00 p.m. that evening, he saw at the apartment the victim and two African-American males, telling the victim that they wanted to use his cell phone and "to go somewhere over on Peacher's Mill."

Donzo Jackson said that, on the night of the offenses, he was driving on Highway 41-A in Clarksville, with a companion in his vehicle, and observed a car pulled over on Victory Street. The vehicle's doors were open, the lights were on, and loud music was coming from the car. Mr. Jackson got out of his vehicle and approached the other car, yelling to get the driver's attention. After getting no response, he telephoned 911 and reported the situation. When he returned to the parked vehicle, as directed, officers already were present.

2

Devin Chapple said that, during the late evening or early morning hours of the crimes, he was driving on Victory Road and observed "a car pulled over with the hazard lights on and the door open and a man's foot sticking out of it."

Linda Snitker testified that she resided on Victory Road in Clarksville and, at about 11:00 p.m. on the evening the victim was killed, she was at her home and heard one "pop . . . followed by five pops after that." Two to three seconds passed between the first pop and the series of pops.

Officer Joel Gibbons testified that he had been employed by the Clarksville Police Department for a little over fifteen years. He arrived at the victim's vehicle at 12:37 a.m. and observed that it was parked partly in the roadway and partly on the adjacent grassy area, the driver's side door was open, and the hazard lights were illuminated. The front passenger door was closed, and all of the windows were rolled up. The victim was in the driver's seat, slumped over the middle console, with his left leg hanging out and his face downward in the passenger seat.

Lethia Marie Van Luven testified that the victim had been one of her best friends. She said that she had arrived at the victim's apartment at about 8:00 p.m. on the night he was killed and left because she had made plans to go out with her friend, Leila. She and the victim then exchanged text messages "the entire time" she was out. His text messages "stopped suddenly," with his last text at 10:53 p.m. He was supposed to be on his way to see her but did not show up, and she sent four or five messages to him after receiving his last message but received no response.

Leila Hight testified that she had been dating and living with the victim at the time of his death. On the evening he was killed, she left the apartment around 8:30 p.m. with her friend, Lisa Bessie, to go to a bar. While at the bar, she sent a text message to the victim and received a last one from him around 10:25 p.m.

Officer Buddy Gillespie of the Clarksville Police Department testified that on April 28, 2012, he made a traffic stop of a vehicle being driven by Davante Acklin, and a "Mr. Johnson" was in the front passenger seat. The vehicle was registered to Mr. Acklin's mother.

Dr. Thomas Deering testified that he was a forensic pathologist and performed the autopsy on the victim. The cause of death was multiple gunshot wounds, with six wound paths. One of the victim's wounds was to the right cheek of his face, and the other five were clustered on the right area of his back. Dr. Deering explained how this wound

3

pattern would have occurred, assuming that the victim had been driving an automobile as he was shot:

> Given he is seated in the driver's seat, seated forward, the shooter would have to be to his right on this particular wound, particular wounds and there is a forward to back component so at some point his back can either face the passenger seat in the front, if it was turned more sharply, or it could face the passenger seat in the back, if it is turned left sharply. The wound in the face, as you remember goes forward and hits the jaw, so if someone is driving, so if the shooter is in the front seat, then his face would have to be in this direction (indicating) to that. If someone is in the back, it would be more in this direction (indicating).

Detective Tim Anderson testified that he was a death and homicide investigator with the Clarksville Police Department and, on May 3, 2012, had been directed to maintain a search warrant log for a residence in Clarksville being searched that day. He said that, during execution of the search warrant at 438 Victory Road, officers recovered a Keltech pistol, Model P3AT .380, serial number JFU83, and the clip for the weapon. The pistol was found underneath a couch cushion in the living room. At the location, officers also recovered a towel with a red brown stain and a Tennessee identification card in Defendant Johnson's name. Officers further recovered a black rag used to cover hair and a Motorola Model XT912 cell phone with charger. Officers also used a swab to take a DNA sample from Defendant Johnson.

Gregory Beebee testified that he was a patrol sergeant with the Clarksville Police Department, and on May 3, 2012, was directed to go to 205 Mitchell Street in Clarksville, to look for Defendant Jones. At that location, he spotted Defendant Jones sitting in the passenger seat of an automobile in the driveway. Officers took him into custody and found, with him, a Samsung boost mobile phone and a Crown Royal bag with sixty-eight unspent rounds of .380 ammunition.

Officer William King testified that he was employed by the Clarksville Police Department and assigned to the Crime Scene Team. In the investigation of the death of the victim, he arrived at Victory Road in Clarksville between 1:30 and 1:40 a.m. to collect evidence. At the scene, he observed a silver vehicle with a white male inside. He tagged as evidence five .380 shell casings and one projectile. From the vehicle, he recovered a New York driver's license in the name of the victim. He recovered seven or eight teeth fragments, one of which was on the roadway and the others in the vehicle.

Officer Lon Chaney testified that he was employed by the Clarksville Police Department and, on May 3, 2012, went with other officers to 205 Mitchell Street in

Clarksville to arrest Defendant Jones. As they arrived, officers saw him sitting in the front passenger seat of the vehicle. After Defendant Jones was taken into custody, and the owner of the vehicle had consented to a search of it, Officer Chaney found some crack cocaine between the door post and the seat where Defendant Jones had been sitting, as well as a firearm under the seat itself.

Detective Josh Jobe testified that he was employed by the Clarksville Police Department, working both as a detective and a member of the Crime Scene Team. He responded to a call to go to the location on Victory Road, where the victim's car had been found. The victim's body was still in the car, and officers removed his cell phone from his back pocket.

Officer Scott Beaubien said that he was both a member of the Crime Scene Team and a training officer with the Clarksville Police Department. The victim's vehicle was found on Victory Road, against the curb, with the engine still running and the transmission in neutral. The driver's door and front passenger door were open, and the driver's window was down about eight inches. In the backseat of the four-door vehicle was a small puppy, which was asleep. To preserve the fingerprint on the front passenger window, officers removed the window and packaged it in Styrofoam to protect the print.

Frederick McClintock testified that he was employed as a drug agent by the Clarksville Police Department, and, at the time of the death of the victim, had been a member of the Crime Scene Team. On May 3, 2012, he had taken a series of photographs during the execution of a search warrant at a residence located at 438 Victory Road in Clarksville. A series of his photographs, showing a do-rag covering for the head and a stained towel, were entered into evidence through him.

Michael Ulrey said that he was a death and homicide investigator for the Clarksville Police Department and had been the lead investigator in the death of the victim. He was present both at the crime scene as well as the residence at 438 Victory Road on May 3, 2012, when a search warrant was executed. Defendant Johnson was present at the residence when the warrant was executed. Investigator Ulrey also took DNA swabs from Defendant Jones and fingerprints from both of the defendants. On cross-examination, Investigator Ulrey said that the last telephone number called from the victim's cell phone was to one registered to Katrina Rogers, the mother of Davante Acklin, who was seen with Defendant Johnson that evening.

David Hoover testified that he was employed by the Tennessee Bureau of Investigation ("TBI") and assigned to the Latent Fingerprint Unit of the Nashville Crime Laboratory. He said that he had received from Investigator Ulrey of the Clarksville Police Department a package containing a known fingerprint impression of Defendant

Johnson. He compared the prints with two latent prints on the window removed from the victim's vehicle and determined that they were the prints of Defendant Johnson.

James Russell Davis testified that he was employed by the TBI as a special agent and forensic scientist. He said that he had examined the swabs from the hands of the victim and determined that gunshot primer residue was present, meaning that the victim had fired, handled, or was near a gun when it fired. Additionally, he testified that he had examined a hoodie taken from 205 Mitchell Street but did not find gunshot residue on it.

Special Agent Bradley Everett testified that he was employed by the TBI in the Nashville Crime Laboratory, Serology/DNA Unit. He said that he had examined a Walther PPK .380 pistol taken from 205 Mitchell Street for the presence of blood and DNA. He said that the gun had DNA from at least three persons, the major contributor being Defendant Jones.

Steve Scott testified that he was employed by the TBI Crime Laboratory in Nashville in the Firearms Identification Unit. He examined the Walther pistol, which was an exhibit in the case, and determined that it was operable. Mr. Scott said that all of the cartridge casings and four bullets removed from the victim's body were from the Keltech pistol and none from the Walther.

Cody Driver testified that he was acquainted with the defendants, both of whom he identified in the courtroom. He was with both men the evening of April 28, 2012, at his residence at 205 Mitchell Street in Clarksville. Around 10:00 p.m., the three went to the residence of Defendant Johnson, where he was "talking about hitting a lick, as in robbing somebody . . . [b]ecause he needed some more money in his pocket." Defendant Jones responded that "he was down with it." Defendant Johnson then dressed all in black, with a black hoodie, do-rag, pants, and shoes. Defendant Jones put on a black shirt. Defendant Johnson got a gun out of the dresser, and the defendants left together on foot at approximately 11:00 p.m. and returned around midnight. Defendant Jones told Driver "he had shot somebody." Defendant Jones had blood on him and used a towel to wipe it off.

## ANALYSIS

On appeal, both defendants argue that the evidence is insufficient to sustain the verdicts and that the trial court erred in imposing consecutive sentencing. Defendant Jones makes the additional arguments that the trial court erred in denying the motion to sever; in not granting the motion for judgment of acquittal; in imposing the maximum sentence for especially aggravated robbery; and in denying the motion to declare a mistrial. As to Defendant Jones's argument regarding error in denying his motion for

judgment of acquittal, no relevant supporting argument is set out in his appellate brief. Therefore, this claim is waived. *See* Tenn. Ct. Crim. App. R. 10(b). We will consider the defendants' remaining arguments.

## I. Sufficiency of the Evidence

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. *State v. James*, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

> atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Both defendants were convicted of felony murder and especially aggravated robbery. For the purposes of this case, felony murder is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery[.]" Tenn. Code Ann. § 39-13-202(a)(2) (2010). "No culpable mental state is required . . . except the intent to commit the enumerated offenses or acts." *Id.* § 39-13-202(b). Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). To convict for especially aggravated robbery, the State had to prove the defendant robbed the victim with a deadly weapon and the victim suffered serious bodily injury. *Id.* § 39-13-403(a).

The proof against these defendants is substantial. Cody Driver, who was with the defendants at his home just before the crimes, testified that they left after agreeing to commit a robbery to obtain money. Both were identified by Steven Butterman as appearing at the victim's apartment, asking for assistance, and leaving with him the last time he was seen alive by anyone other than the defendants. The victim was shot multiple times, and his body was left in his vehicle. Bullets removed from the victim's body and shell casings found in his vehicle were fired by the Keltech pistol recovered from the residence of Defendant Johnson, who later told Mr. Driver that he had "popped somebody." Additionally, as to Defendant Jones, under the vehicle seat when he was later arrested was found the pistol which the victim had when he left his apartment the evening of his murder. Further, as Defendant Jones returned to Defendant Johnson's residence after murdering and robbing the victim, Jones wiped off on a towel the victim's blood, leaving the towel behind.

Relevant to our review of this issue is the law of criminal responsibility, with which the jury was charged. Criminal responsibility is not a separate offense but "solely a theory by which the State may prove the defendant's guilt of the alleged offense, . . . based upon the conduct of another person." *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999). A person is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Tenn. Code Ann. § 39-11-402(2) (2010).

It is clear, by the verdicts, that the jury found that the State had proven beyond a reasonable doubt that the defendants murdered the victim during the course of robbing him. The evidence supports this conclusion. As for the additional arguments by Defendant Jones that he was only present during the homicide, the jury was instructed regarding criminal responsibility and rejected this argument. We conclude that the evidence supports this determination as well. Accordingly, this argument is without merit.

## II. Sentencing

Defendant Jones argues that the trial court erred in imposing the maximum sentence for especially aggravated robbery, and both defendants argue that the court erred in imposing consecutive sentences. As we will explain, these arguments are without merit.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has stated that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In conducting its review, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210; *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the

9

minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* Tenn. Code Ann. § 40-35-114; *see also Bise*, 380 S.W.3d at 701; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." *Id.* at 345-46. "[They are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in the Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. *Id.* § 40-35-115(b)(4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence was necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. *State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999); *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995). As to consecutive sentencing, our standard of review is abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013).

In sentencing Defendant Jones, the court noted that he had been charged with aggravated assault at age 14 and adjudged a delinquent. The court considered the circumstances of the defendant's new convictions and explained that the defendants had planned the robbery, changed into dark clothing, obtained a weapon, and gone to the apartment building where the victim lived, looking for someone to prey on. They then

proceeded to shoot the victim multiple times at point blank range. As an enhancement factor, the court concluded that the crimes were a joint effort, meaning that each defendant was a leader in the offenses. As for whether Defendant Jones's conduct was mitigated by his age, the court found that the crimes were premeditated and the defendant understood what he was doing. Accordingly, age was not a mitigating factor. The court further determined that Defendant Jones would receive consecutive sentences because he was a dangerous offender who had little or no regard for human life and did not hesitate in committing a crime in which the risk to human life was high, that he showed no concern for the consequences of his actions, that he had exhibited no remorse for the crimes, and all of this showed that the public should be protected from him well into the future.

As to the court's analysis before imposing consecutive sentences, Defendant Jones argues on appeal that there was "absolutely no testimony presented at trial that [he] planned to commit the robbery." Additionally, he argues that the court erred in concluding that he was a dangerous offender. The evidence supports this determination by the trial court. Further, Defendant Jones argues that "the trial court placed [an] emphasis on [Defendant] Jones['s] lack of testimony at the sentencing hearing in which he should have expressed remorse." The sentencing transcript does not support this claim. Rather, the court said at the sentencing hearing that, by no act, had the defendant demonstrated any remorse, and that fact, coupled with his history of violence, suggested that society must be protected from him.

Accordingly, we conclude that the record easily supports the trial court's determination that Defendant Jones should serve his sentences consecutively.

Defendant Johnson makes a similar argument as to consecutive sentencing, saying that justice still can be achieved with a lesser sentence. He asserts that the trial court did not properly consider Defendant Johnson's youthful lack of judgment, that consecutive sentencing likely would result of his dying of old age while still in custody, and that, because of his age, he would not still be considered a dangerous offender upon being paroled from his life sentence. Our review of consecutive sentencing is reviewed with an abuse of discretion standard with a presumption of reasonableness. Applying this standard, we cannot conclude that the trial court abused its discretion in imposing consecutive sentences.

Defendant Jones also argues that the trial court erred in imposing a twenty-five-year sentence for his especially aggravated robbery conviction. His basic argument in this regard is that the proof was not sufficient for him to be considered a leader in the offenses. The State responds that the trial court properly applied the applicable principles and purpose of sentencing in applying two enhancement factors. First, the court noted

that Defendant Jones was charged as a juvenile with aggravated assault, adjudged delinquent, and placed in the custody of the Department of Children's Services. Additionally, the court noted that the defendants discussed the robbery and dressed in appropriate clothing before shooting and killing the victim; that, appearing together, they sought a ride in his vehicle; that the victim was shot multiple times as his vehicle was pulled partially off the road; and that, based upon these facts, the crimes were a joint effort, meaning that each could be considered a leader. We conclude that the court did not abuse its discretion in making this determination and imposing a sentence of twenty-five years.

### III. Denial of Motion for Mistrial

Defendant Jones argues on appeal that the trial court erred in not declaring a mistrial after Officer Lon Chaney testified during his direct testimony that, as Defendant Jones was arrested while sitting in a vehicle, a quantity of what appeared to be crack cocaine was found next to him. This occurred after the State had earlier instructed Officer Chaney not to mention the drugs during his trial testimony.

The decision of whether or not to declare a mistrial lies within the sound discretion of the trial court. *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000). A mistrial should be declared in a criminal case only when something has occurred that would prevent an impartial verdict, thereby resulting in a miscarriage of justice if a mistrial is not declared. *See id.*; *State v. Jones*, 15 S.W.3d 880, 893 (Tenn. Crim. App. 1999); *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks*, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991) (quoting *Arnold*, 563 S.W.2d at 794). A manifest necessity exists when there is "no feasible alternative to halting the proceedings." *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. 1981). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. *Land*, 34 S.W.3d at 527. This court will not disturb the trial court's decision unless there is an abuse of discretion. *Id.*

The record shows that, immediately after Officer Chaney's mention of crack cocaine found next to Defendant Jones, his attorney asked for a mistrial because the testimony was violative of an earlier order of the court regarding such evidence. The court denied the motion and instructed the jury that the testimony was not to be considered by them:

> Ladies and Gentlemen, the witness has testified that in the course of his duties, he saw . . . the substance that he thought was cocaine. Neither one of these defendants is charged with any drug offense. Whether what he

saw was or was not cocaine and even if it was, who it belonged to, all of that is immaterial. It is not relevant to these proceedings and you should not consider it for any purpose whatsoever.

Defendant Jones argues on appeal that the testimony violated his right to a fair trial and that the court should have granted his mistrial request. However, given the fact that this testimony came in spite of the State's earlier instructions to the witness that it should not be mentioned at the trial, the judge's prompt instructions that it was not to be considered by the jury, the fact that it was not relevant to the matter on trial, and the substantial proof of the guilt of Defendant Jones, we conclude that the trial court did not err in denying the motion for mistrial.

## IV. Denial of Motion to Sever

Prior to trial, Defendant Jones filed a motion to sever the trials of the two defendants, arguing that he could not receive a fair trial because of statements of Defendant Johnson, while in custody, to Investigator Ulrey, implicating Defendant Jones both in the robbery and killing of the victim as well as a robbery of a Kentucky Fried Chicken Restaurant in Clarksville. However, on appeal, Defendant Jones argues that the damaging statements necessitating a severance were those made by Cody Driver at trial, who testified, as we have set out, that he was with both defendants prior to the killing of the victim and he related their preparations for and conversations regarding the crimes they were planning. While Defendant Jones is correct that Mr. Driver provided very damaging testimony against both defendants, his basis for the motion for severance was centered upon statements made by Defendant Johnson to Investigator Ulrey, not to those made to Mr. Driver. As the State correctly points out, Defendant Jones did not object to Mr. Driver's testimony at trial. "It is well-settled that an appellant is bound by the evidentiary theory set forth at trial, and may not change theories on appeal." *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) (citing *State v. Banes*, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993)). Based upon our review of the record, we conclude that the defendant has presented a new theory on appeal as to why the trial court should have severed the trials of the defendants. Accordingly, this claim is without merit.

The judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

13